# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | | |
|---|---|---|
| **DARREN A. LAMEAR,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:13-cv-01319-AC |
| | ) | |
| v. | ) | **FINDINGS AND** |
| | ) | **RECOMMENDATION** |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ACOSTA, Magistrate Judge:**

Darren Lamear ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by substantial evidence, the decision should be AFFIRMED.

### Procedural Background

Plaintiff filed his application for DIB on May 18, 2010, alleging disability as of April 16, 2008. (Tr. 18, 174.) The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 98-99.) After an administrative hearing, the ALJ issued a decision on March 20, 2012, finding plaintiff not disabled. (Tr. 15-25.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-3.) Plaintiff now seeks judicial review of that decision.

### Factual Background

Born in November, 1964, plaintiff was 43 years old on his alleged onset date. (Tr. 24.) He protectively filed for DIB on May 18, 2010, alleging disability due to back problems. (Tr. 170, 174.) Plaintiff speaks English and completed the 12th grade. (Tr. 175.) His past relevant work experience includes nearly 20 years as a stockbroker, and also includes work as a cashier and as a bartender. *Id.*

### Standard of Review

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may

Page 2 – FINDINGS AND RECOMMENDATION

not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. § 404.1520(e) & (f). If the

Page 3 – FINDINGS AND RECOMMENDATION

Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 404.1566.

### The ALJ's Findings

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 20.) At step two, the ALJ concluded that plaintiff had the severe impairments of degenerative disc disease of the cervical spine post discectomy and fusion, and degenerative disc disease of the lumbar spine. *Id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; stand and walk up to two hours out of an eight hour day and sit six hours out of an eight hour day; he cannot climb ladders, ropes or scaffolds; he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, reach overhead with his left upper extremity, and handle, finger, and feel with the left hand; he should avoid even moderate exposure to hazards. (Tr. 20-21.) At step four, the ALJ found that plaintiff was unable to perform any of his past relevant work. (Tr. 24.) At step five, the ALJ determined that there plaintiff could perform jobs that exist in significant numbers in the national economy, including office helper, mail clerk, and parking lot cashier. (Tr. 25.) The ALJ therefore concluded that plaintiff was not disabled. *Id.*

### Discussion

Plaintiff argues that the ALJ erred by (1) rejecting the opinion of treating physician Thomas Starbard, M.D., and (2) failing to reconcile a conflict between the VE testimony and the DOT.

I.    Treating Psychiatrist Thomas Starbard, M.D.

Plaintiff argues that the ALJ erred by rejecting the opinion of treating psychiatrist Thomas Starbard, M.D.  Pl.'s Br. 5.  The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).  The Ninth Circuit distinguishes between the opinions of three types of physicians:  treating physicians, examining physicians, and non-examining physicians.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician.  *Lester*, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion.  *Lester*, 81 F.3d at 830.  Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008).

Dr. Starbard began treating plaintiff for chronic back pain on September 11, 2005. (Tr. 589.) In a letter submitted on February 29, 2012, he summarized his medical findings regarding plaintiff's symptoms and limitations. *Id.* First, Dr. Starbard opined that plaintiff "suffers from degenerative disc disease and muscle spasm primarily in the lower thoracic and lumbar regions." He noted that plaintiff has three disc protrusions, including one at L4-5 that increased in size between 2007 and 2010. Plaintiff has "relatively good and bad days" with respect to his back problems. On bad days, which occur about ten days per month, plaintiff "would need to lay down for at least five minutes out of every hour to rest his back." Dr. Starbard estimated that plaintiff would miss at least two days of work per month due to his back problems, and that he might miss three-to-four days on a particularly bad month. He wrote that plaintiff could stand and walk up to three hours in an eight-hour day and sit up to seven hours in an eight-hour day; that he should never stoop, crouch, push, or pull; and that he would be limited to occasional reaching if applying any pressure or lifting any weight. *Id.*

The ALJ gave Dr. Starbard's opinion little weight. (Tr. 23.) Instead, he credited the medical opinion of consultative physician Neal Berner, M.D., who opined in August 2010 that plaintiff could perform some work and did not have the extreme physical limitations assessed by Dr. Starbard. (Tr. 23, 57-61.) Because Dr. Starbard's opinion was contradicted by other medical evidence in the record, the ALJ was required to provide specific, legitimate reasons for rejecting his limitations. *Murray*, 722 F.2d at 502.

The ALJ provided at least three specific, legitimate reasons for rejecting Dr. Starbard's opinion. First, the ALJ noted that Dr. Starbard's limitations were inconsistent with his other objective findings. (Tr. 23.) An ALJ may reject a physician's opinion regarding a patient's limitations when the limitations are not supported by the physician's own clinical findings and

Page 6 – FINDINGS AND RECOMMENDATION

observations. *Whosendorfe v. Astrue,* 2010 WL 2179553, at *5 (D. Or. May 5, 2010); *Tommasetti*, 533 F.3d at 1041. Specifically, Dr. Starbard's most recent examination, in July 2011, revealed that plaintiff walked "without significant limp or list;" and showed no antalgic postures. (Tr. 23, 581.) Further, although an MRI revealed a small disc herniation in plaintiff's back in 2010, Dr. Starbard's notes reveal that the herniation was associated only with mild pain extending into plaintiff's leg. (Tr. 573-74, 584-86.) Following plaintiff's neck surgery in February 2010, Dr. Starbard's notes reveal only intermittent back pain and weakness in his lower limb. (Tr. 583, 584.) The extreme limitations that Dr. Starbard assessed are not supported by his most recent examinations. *Id.* The ALJ thus provided a specific, legitimate reason for rejecting his opinion. *Tommasetti*, 533 F.3d at 1041.

Second, Dr. Starbard's opinions are contradicted by the medical findings of other providers. Inconsistency with medical records is a specific, legitimate reason for rejecting a physician's controverted opinion. *Tommasetti*, 533 F.3d at 1041. Suvarna Palla, M.D., examined plaintiff on multiple occasions and opined that he demonstrated full strength in his extremities and walked "without any difficulty" despite complaints of chronic low back pain. (Tr. 22, 275.) Jay Rosenbaum, M.D., who examined plaintiff for a surgical consultation, also noted normal gait and muscle strength. (Tr. 22, 569-71.) Examining neurosurgeon Thomas Dietrich, M.D., performed an independent medical examination in 2008 and noted only "slight guarding of motion" and a "somewhat slow" but otherwise normal gait. (Tr. 599.) Dr. Dietrich stated that it was reasonable to limit plaintiff to lifting no more than 50 pounds occasionally and 20 pounds frequently. (Tr. 22, 599, 602-03.) The medical findings of Drs. Palla, Rosenbaum, and Dietrich suggest that plaintiff's back problems were not so severe as to greatly impact his gait and overall strength. These findings therefore conflict with the severe limitations described

Page 7 – FINDINGS AND RECOMMENDATION

by Dr. Starbard.  The fact that plaintiff appeared to walk and move consistently well upon multiple examinations by three different providers also arguably conflicts with Dr. Starbard's finding that plaintiff would miss several days of work per month or require special accommodations that are not captured by the RFC.[1]  On this record, the ALJ provided a second specific, legitimate reason for rejecting Dr. Starbard's opinion. *Tommasetti*, 533 F.3d at 1040-41.

Finally, the ALJ noted that Dr. Starbard's opinion was contradicted by plaintiff's daily activities.  An ALJ may reject a physician's opinion that is inconsistent with a claimant's daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, for example, plaintiff was able to work part-time at a call center, assist his mother at home, perform light cleaning, do laundry, and go shopping.  (Tr. 23, 181-84, 314, 583.)  It was reasonable for the ALJ to infer that plaintiff's range and frequency of daily activities after his alleged onset date was inconsistent with the severe limitations on motion assessed by Dr. Starbard.  Although plaintiff provides an alternative, rational interpretation of the evidence, the ALJ's reasonable conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).In sum, the ALJ's rejection of Dr. Starbard's more restrictive assessment of plaintiff's limitations was supported by specific, legitimate reasons and should be affirmed.

II.    Conflict between VE Testimony and the DOT

Plaintiff also argues that the ALJ failed to reconcile a conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT").  The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d

---

[1] As noted above, the RFC states that plaintiff can stand and walk up to two hours out of an eight hour day and sit for six hours out of an eight hour day.  (Tr. 20-21.)

1428, 1434-35 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Before the ALJ may rely on the VE's testimony, he "must first determine whether a conflict exists." *Massachi*, 486 F.3d at 1153. In accordance with Social Security Ruling 00-4p, the ALJ must ask the VE if her testimony is consistent with the DOT. *Id.* at 1152–53. If "there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict." SSR 00-4p, 2000 WL 1898704, at *2; *see also Massachi*, 486 F.3d at 1153-54. Plaintiff contends that the ALJ's step five findings are not supported by substantial evidence because he did not ask the VE about the discrepancy between plaintiff's manipulative limitations and the manipulative requirements of the occupations listed by the VE. Pl.'s Br. 13. The Court disagrees.

Here, the ALJ posed the correct hypothetical to the VE that described all of plaintiff's limitations, including the limitation that plaintiff can only occasionally handle, finger, and reach with his left hand. (Tr. 20-21, 48-50.) *See Bayliss v. Barnhart,* 427 F.3d 1211, 1217–18 (9th Cir. 2005) (A vocational hypothetical is sufficient if it includes all of the claimant's limitations that are supported by substantial evidence in the record). The VE identified three representative occupations based on the ALJ's hypothetical: office helper, mail clerk, and parking lot cashier. (Tr. 50.) These occupations have specific manipulative and postural requirements, and require "frequent" handling, fingering, and reaching. *See* Selected Characteristics of Occupations ("SCO"), Part A., at 07.07.03 (office helper), 07.05.04 (mail clerk), 07.03.01 (parking lot cashier).

The DOT does not indicate whether workers must use one or both hands to satisfy these manipulative requirements. Because plaintiff has no limitation in his right-dominant hand, there

Page 9 – FINDINGS AND RECOMMENDATION

is no straightforward inconsistency between the VE testimony and the DOT. In the absence of an apparent conflict, the court need not substitute its judgment for that of the VE. *Rounds v. Comm'r*, 3:12-cv-00342-MA, 2013 WL 1767880 at *11 (D. Or. April 24, 2013); *see also* SSR 00-4p, at *2. As there is no direct conflict between the DOT and VE's testimony, any failure to inquire of the VE whether his testimony was consistent with the DOT was harmless error.[2] *See id.* at *11; *Lee v. Astrue*, 2013 WL 129*6071, at *11 (D. Or. Mar. 28, 2013). The ALJ's decision should be affirmed.

---

[2] The VE testified regarding a discrepancy between the hypothetical and the strength required for the representative occupations. The ALJ did not, however, inquire about a discrepancy arising from plaintiff's left hand limitations and the manipulative requirements of the representative jobs. (Tr. 48-51.)

Page 10 – FINDINGS AND RECOMMENDATION

*Recommendation*

The Commissioner's decision is supported by substantial evidence in the record, and should therefore be **AFFIMED**.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 15th day of September 2014.

JOHN V. ACOSTA
United States Magistrate Judge

Page 11 – FINDINGS AND RECOMMENDATION